IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA BROWN SYKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-cv-827-WC |
| | ) | [wo] |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On September 12, 2014, Sandra Brown Sykes ("Plaintiff" or "Sykes") protectively filed for disability insurance benefits under Title II of the Social Security Act ("the Act") alleging a disability date of April 15, 2013. (R. 222, 229). Subsequently, on November 25, 2014, she also protectively filed a Title II application for disabled widow's benefits alleging a disability date of April 15, 2013. (R. 226, 228). Her applications were denied on December 4, 2014. (R. 123). Upon a timely request, Sykes appeared before Administrative Law Judge Vickie Evans for a hearing conducted by video-teleconference. (R. 58). Thereafter, Sykes appeared at a supplemental hearing on August 23, 2016 (R. 38).

Following the hearings, the ALJ rendered an unfavorable decision on November 2, 2016. (R. 15). The Appeals Council denied Plaintiff's request for review. (R. 1-7). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security. ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28

U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. NATURE OF THE CASE

Sykes seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and social security income. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one. The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). "The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S.

389, 401 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). Claimants establish a prima facie case of qualifying for disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if

Page **5** of **11**

there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[1] ("grids") or hear testimony from a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

### IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Sykes was fifty-two years old when the ALJ rendered her decision. (R. 67). She has a general equivalency diploma (GED) and previously worked as an inspector, retail stocker, fabric inspector, quality control checker, and stock clerk (retail). (R. 30, 49, 67, 91, 249). Plaintiff alleges that she has been unable to work since April 15, 2013 due to lower back pain, sciatic nerve, spurs in neck, tennis elbow on left side, swelling and nerve problems in both feet, muscle spasms in back, anxiety, depression, and problems sleeping. (R. 248).

The ALJ found Plaintiff had the medically determinable severe impairments of degenerative disc disease of the lumbar spine, right shoulder bursitis, and obesity. (R. 21). The ALJ found that, as a result of these impairments, Plaintiff had the residual functional capacity (RFC)

> to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for two hours each in an eight-hour workday; sit for six hours in an eight-

---

[1] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

\#

> hour workday; never climb a ladder, rope, or scaffold, crawl, or crouch; occasionally climb ramps and stairs, balance, stoop, and kneel; must avoid more than occasional overhead reaching or lifting with the right upper extremity, could perform overhead reaching or lifting with the left upper extremity and all other reaching with the bilateral upper extremity frequently; must avoid more than occasional pushing and pulling with the left upper extremity; never push and pull with the right upper extremity; occasionally operate foot controls with the bilateral lower extremity; and must avoid work at unprotected heights or around hazardous machinery. (R. 23).

(R. 23).

Based upon her RFC finding, and relying in part on the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing past relevant work as a quality control checker and fabric inspector. (R. 30). Alternatively, the ALJ found at Step Five that, given her "age, education, work experience, and residual functional capacity," Plaintiff could perform other jobs existing in significant numbers in the national economy. (R. 31). Based upon the testimony of the VE, the ALJ identified the following representative occupations: "information clerk," "counter clerk," and "garment bagger." (R. 32). Thus, the ALJ found Plaintiff was not disabled from April 15, 2013, her alleged onset date, through November 2, 2016, the date of the administrative decision. (R. 32)

## V. MEDICAL HISTORY

Dr. Richard Meadows examined Plaintiff one time in February 2016. (R. 467-69). Plaintiff complained of back pain, hip pain, shoulder pain, and neck pain. (R. 467). On physical examination, Dr. Meadows observed Plaintiff had full range of motion in her back and cervical spine, but that she was tender to palpation over her lumbar-sacral spine. (R. 468). Plaintiff also had full range of motion in her upper and lower extremities, except she had limitations in her right shoulder due to pain. (R. 468). Dr. Meadows observed Plaintiff

had normal strength, no edema, negative straight leg raises bilaterally, negative Tinel's sign, normal reflexes, normal gait, and she could toe and heel walk and squat. (R. 468). Dr. Meadows assessed Plaintiff with low back pain, other intervertebral disc degeneration (lumbosacral region), pain in right shoulder, cervicalgia, and major depressive disorder (single episode, unspecified). (R. 468).

Dr. Meadows also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). (R. 475-80). He checked boxes indicating Plaintiff could lift up to 20 pounds occasionally and carry up to ten pounds occasionally, but could not lift or carry any weight frequently. (R. 475). He indicated Plaintiff could sit 90 minutes at one time without interruption and a total of six hours in an eight hour workday, stand 60 minutes at one time without interruption and a total of two hours in an eight-hour workday, and walk for 60 minutes at one time and a total of two hours in an eight-hour workday. (R. 476). He checked boxes indicating Plaintiff could reach overhead occasionally with the right hand and frequently with the left hand, frequently reach otherwise bilaterally, continuously handle, finger, and feel bilaterally, occasionally push and pull with the left hand, and never push or pull with the right hand. (R. 477). Dr. Meadows checked boxes indicating Plaintiff could occasionally operate foot controls bilaterally, she could occasionally climb ladders and scaffolds, and she could frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. (R. 477-78). He indicated Plaintiff could never work at unprotected heights, and she could frequently work with moving mechanical parts. (R. 479).

The ALJ considered Dr. Meadows's opinion and gave it "generally great weight" (R. 27). Indeed, the ALJ included limitations in the RFC consistent with Dr. Meadows's

assessed restrictions with respect to Plaintiff's ability to stand, walk, sit, and perform various postural activities. (R. 23, 26-27, 475-80). The ALJ noted Dr. Meadows's examination findings were consistent with the findings of Mark B. Ellis, D.O., who previously examined Plaintiff and observed mostly normal findings, other than pain with palpation of the lumbar spine and some minor limitations in range of motion. (R. 25-27, 323-38). The ALJ further noted that Dr. Meadows's opinions were supported by and consistent with diagnostic images of the lumbar and cervical spines, which revealed multilevel spondylosis in the lumbar spine, mild anterolisthesis of L3 on L5, and moderate degenerative disc disease and mild facet arthropathy. (R. 28, 473-74).

## VI. ISSUE

Whether the ALJ erred when she gave "generally great weight" to the opinion of Dr. Meadows, but failed to explain why she discounted Dr. Meadows opinion that Plaintiff could not lift or carry any weight frequently. *See* Pl.'s Br. (Doc. 13) at 3.

## VII. ANALYSIS

The ALJ gave the consultative opinion of Dr. Meadows "generally great weight," and specifically stated that "Dr Meadow's medical source statement conclusions were supported by and consistent with the diagnostic imaging of the lumbar and cervical spines he cited in his evaluation." (R. 27-28). However, Plaintiff argues that the ALJ erred because her assessment in the RFC that Plaintiff could frequently lift and carry up to ten pounds is inconsistent with Dr. Meadow's questionnaire responses, which indicated Plaintiff could only occasionally lift up to 20 pounds and carry up to ten pounds, and further that she could not frequently lift or carry any amount of weight. (R. 23, 475). The Court agrees.

In the instant case, the ALJ noted Dr. Meadows's findings, including that he opined that Plaintiff "could occasionally carry up to ten pounds" and "could never carry eleven pounds or greater." (R. 26-27). However, the ALJ did not discuss Dr. Meadows's finding that Plaintiff could not frequently lift and carry any amount of weight. (R. 475). Nevertheless, the ALJ purported to have "granted generally great weight" to Dr. Meadows's opinion because "his examination findings were consistent with the findings of Dr. Ellis[,]" and were "supported by an consistent with the diagnostic imaging of the lumbar and cervical spines he cited in his evaluation." (R. 27-28). Notably, the ALJ did not explain her implicit rejection of Dr. Meadows's opinion that Plaintiff cannot frequently lift and carry any amount of weight. This is especially troubling considering the VE's testimony at the hearing in response to questioning from Plaintiff's representative:

> Q. Ms. Skinner, I want to go back through hypothetical one and I have one change to that hypothetical and that's in regards to the lifting requirements and I want to change the lifting requirements to 20 pounds occasionally, but no weight frequently. Would that change your response to the first hypothetical?
> A. Can occasionally lift 20, but nothing frequently?
> Q. That's correct.
> A. Gosh, yes, yeah, that would.
> Q. All right.
> A. It would eliminate the prior work
> Q. Okay. Would there be any jobs available for an individual with those restrictions?
> A. Not if they can't lift anything, no.

(R.55-56).

The Court concludes that, where, as here, the ALJ found that Dr. Meadows's opinions were supported by the diagnostic images of the lumbar and cervical spines (R. 28, 473-74), and purported to give Dr. Meadows's opinion "generally great weight" due to its objective

#

medical support, and where the testimony of the Vocational Expert clearly demonstrated that a finding of no frequent lifting or carrying—as plainly opined by Dr. Meadows—would eliminate all work possibilities for Plaintiff, (R. 55-56), the ALJ erred in failing to explain her reasons for implicitly discounting Dr. Meadows's lifting and carrying finding. *See, e.g., Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (reversing and remanding lower court's decision affirming the Commissioner's finding of no disability because the ALJ failed to discuss "pertinent elements of the examining physician's medical opinion," and failed to articulate grounds for rejecting such opinion, and holding that "without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence"). Accordingly, the Court concludes that this matter is due to be remanded for the ALJ to consider the testimony of the VE in light of Dr. Meadows's opinion as to Plaintiff's restrictions on lifting and carrying, and to clearly articulate her reasons, if any, for rejecting that opinion.

## VIII. CONCLUSION

For the reasons discussed herein, the decision of the Commissioner will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) so that the Commissioner can conduct additional proceedings consistent with this opinion.

A separate judgment is entered herewith.

DONE this 3rd day of December, 2018.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE